afternoon is case number 4-15-0406, the people of the state of Illinois v. Donovan Wheeler. For the appellant, we have Ms. Rubio, and for the athlete, we have Ms. Paige Brooks. You may proceed, counsel. Good afternoon, Your Honors. This afternoon, I'd like to focus the argument today on issues 2 and 3 from Donovan Wheeler's brief, but I'm happy to answer questions about any of the issues you might have. And if I can reserve a few moments for rebuttal, please. You will have time on rebuttal. When the light turns yellow, you're almost out of time. When it turns red, you are out of time. Okay, thank you. May it please the Court. From the beginning of this case, Donovan Wheeler's attorney had reason to know that co-defendant John Billups' defense would be antagonistic to Wheeler's. As early as opening statements, it was clear that the theory of Billups' case and defense was that there were two robbers, and that he was not one of them. And that the DNA evidence excluded him as one of them. As the trial proceeded, it became even more clear through the cross-examination of the state's witnesses, and especially during closing argument, that Billups' defense was not just that he was not one of the two robbers, but specifically that the two robbers were Jabari O'Connor and Donovan Wheeler. As a result, Wheeler ended up having to defend against two accusers, the state and Billups, because defense counsel never moved to sever the cases. Severance of cases should take place when joinder would unfairly prejudice either defendant. And a failure to sever prejudices a defendant under two different circumstances. One is when a defendant makes an out-of-court statement against the other defendant, or when the defendant's defenses are antagonistic. And in this case, the second situation squarely covers this case. Antagonistic defenses occur when one co-defendant attempts to exculpate himself while inculpating the other defendant. And that's exactly what happened here. Counsel, let me ask you a question. When did it become apparent, in your view, when should it have been apparent to defense counsel that there were antagonistic defenses? Well, I think the first clue was during discovery, when the evidence presented by the state, the DNA evidence, showed that there was going to be some attempt to connect through DNA evidence Donovan Wheeler, but that all the DNA evidence and any of the fingerprint evidence excluded John Billups. That should have put him on alert. And as the opening statements began, it became clear that Billups was going to use the DNA evidence, referencing that every single piece of DNA evidence excluded Billups. How is that antagonistic, that he's excluded by the DNA evidence? How does that inculpate the co-defendant? Well, I think that it was a red flag at that time because the DNA evidence didn't exclude Donovan Wheeler. And so we have that initial conflict right there. And then as the case developed, it became very clear that the theory of Billups' defense was that there were just two robbers. And that by closing, I would say definitely defense counsel should have moved to severance. If there wasn't enough evidence at the beginning of trial or during cross-examination to make a proper argument for severance, definitely by the time of closing argument, he should have moved for mistrial or moved for severance and moved for severance. Because during closing, defense counsel for Billups explicitly implicated Donovan Wheeler. But didn't counsel also, in closing, indicate that there were three robbers, just that Billups wasn't one of those three? No. Am I mistaken on that? I believe that defense counsel for Billups presented the defense that there were only two robbers. And that tried to elicit testimony from the state's witnesses, suggesting that maybe they only heard one voice from the front of the jewelry store and they saw the one individual in the back of the store. And then used those comments to make the assertion that only two robbers. The defense was explicitly that only two robbers were involved in the commission of the offense. And then he went on to say not only that John Billups was not one of those robbers, but that the two robbers were Jabari O'Connor and Donovan Wheeler. And that's the antagonism there. Another thing that defense counsel did during closing argument is that he argued that Donovan Wheeler's testimony was incredible. Again, an act that Donovan Wheeler should expect from the state, but should not have to defend against from another accuser. And the mere fact that John Billups presented the defense that there were two robbers, in fact, that in and of itself is antagonistic because Donovan Wheeler testified to an alibi and testified that he saw three black men running. And so that also created the argument that Donovan Wheeler's testimony about that fact was also incredible. This case is very similar to the Illinois Supreme Court case of Byron and Bean and the accompanying case of Byron. In that case, the co-defendant, Byron, testified to an alibi and didn't explicitly state on the stand that the co-defendant, Bean, had committed the murder. But it was through the cross-examination of the witnesses and during closing argument where he presented a defense that he was not the murderer, but that Bean was the murderer. And that's exactly what we have here. The fact that Billups did not take the stand and point the finger at Wheeler does not make this not antagonistic. We have to look to the defense that was presented by Billups' attorney. And if we do, it should be clear that defense counsel should have moved to sever these cases because, in effect, Donovan Wheeler was subjected to two accusers, the state and Billups. And in this case, prejudice is actually tangible because here it's clear that the jury believed Billups' defense because they acquitted him. They believed the theory that he presented and then they convicted Donovan Wheeler. So in this particular case, the prejudice is absolutely visible. Could it have been strategy of defense counsel for Mr. Wheeler to choose not to move for mistrial? I mean, at best, it seems like the antagonistic defense arose in the closing arguments. So could it have been a strategic decision to not pursue that? I don't think that there could be any sound trial strategy that could support the belief that not pursuing a successful mistrial motion would be better than rolling the dice with the same jury who heard John Billups' defense and who, at that point, there's really no reason to take that risk. The mistrial would have been granted and Donovan Wheeler was already prejudiced by that point by having to defend against two accusers. And the trial most certainly would have come out differently if defense counsel had moved to sever. That, you know, perhaps they were relying on the other defense attorney's conduct or abilities, as the state argued in their brief. That is certainly not sound trial strategy because the better opposing counsel does in presenting John Billups' case, the more incriminating it is against Donovan Wheeler. And the other prejudicial aspect of the antagonistic defense is Billups' attorney's use of the DNA evidence. So not only did the jury hear DNA evidence presented by the state, but then it was reiterated and exaggerated and exploited by John Billups. And that DNA evidence shouldn't have come in in the first place. And that would be the second argument supporting ineffective assistance of counsel that I wanted to address today. You know, John Billups was the only person identified in this case by one of the victims as having a gun, as being the robber with the gun. The only person identified at all as being there. And he's the only one acquitted. And the only difference between the state's evidence against John Billups and that against Donovan Wheeler was the DNA evidence. And John Billups' attorney exploited that DNA evidence by arguing that Billups was excluded from all of that DNA evidence and that that DNA evidence tied Donovan Wheeler to the crime scene and to Jabari O'Connor. So that's yet another reason why the antagonism in this case was particularly egregious. That DNA was an important part of the state's case and Billups' case. And trial counsel should have moved to exclude it because it was so scientifically insignificant that it was irrelevant. And yet unduly persuasive to the jury, as evinced in this case. General rules of evidence apply to DNA evidence. And for evidence to be admissible, it has to be relevant. Relevant evidence is any evidence that has any tendency to make a fact of consequence more or less probable than without it. In this case, the DNA probability calculations were so low that they did not tend to make Donovan Wheeler's identification as the source of that DNA more or less probable. Therefore, it was irrelevant and inadmissible. And so we're looking at, what was it, 1 in 32,000? We're looking at two pieces of evidence. One was a piece of a latex glove that was found just outside the door of the jewelry store. That had a probability of inclusion of 1 in 2. And the other item was, it also contained a major profile and a minor profile. The major profile included Jabari O'Connor's DNA with a much higher probability of inclusion. And then the minor profile was a one locus test. A one locus comparison with a 1 in 2 probability of inclusion. It's almost meaningless. The other item was a skullcap, a black skullcap, that was found across the street and in a field near an open theater. And that was found along with a metal pipe. There was no human DNA found on the metal pipe, but there was a mixture of DNA found on the skullcap. The major contributor could not be, was not suitable for comparison. The second minor contributor, they were only able to use three loci out of 15 to make a comparison. And they said that 1 in 32,000 was the chance, was the probability of inclusion as to Donovan Wheeler. And you're arguing that it's not relevant, the 1 in 32,000 probability of inclusion? These, yes, I'm arguing that both of them should have been excluded. Given the low number of 1 in 32,000 as compared to some of the other statistics that we typically hear in DNA cases. The statistics such as, in this case, relating to O'Connor, where it's 1 in 59 quintillion, or 1 in 3.1 sextillion. 1 in 32,000 is, in DNA world, very insignificant. 1 in 2, obviously, is, like I said, essentially meaningless. But that small number, or large number, of the population that could have contributed to that sample, coupled with the three loci used on a partial DNA, on a minor DNA profile. I think all of those factors contribute to a finding that those numbers, in this case, lead to, should lead to a finding that these numbers are so insignificant that they are irrelevant. Is there a baseline? I mean, where do we draw the line? You know, I don't have any case law to suggest a baseline. And I would just say, there might be, but this is not it. I mean, it has to be more than this. But if this court finds that the 1 in 32,000 was enough, then certainly the 1 in 2 should have been excluded. Defense counsel should have moved to exclude that. And even if it was errored only not to challenge the 1 in 2, that error alone was enough to cause prejudice, requiring a new trial in this case. That piece of evidence linked Donovan Wheeler to the crime scene just outside the front door of the jewelry store. That's the only piece of evidence linking Wheeler to the crime scene. It's also the only piece of evidence linking, or which the state used to link Donovan Wheeler to being at that scene with Jabari O'Connor, because O'Connor's DNA was also found, or he was also not excluded from being the major contributor of the profile, of the major profile on that piece of latex glove. So it completely destroys Donovan Wheeler's defense, which was, he wasn't there. He wasn't there, he was somewhere else, he sees three men running past, and that's when he and Jabari O'Connor connect and go and hide in the basement together for different reasons. The fact that that glove was introduced really destroyed the credibility of Donovan Wheeler's testimony, and prejudiced him, because again, Donovan Wheeler's found guilty of this crime, where John Billups is acquitted, even though he's the only one that's actually identified. So I think this evidence went a long way. The state exaggerated the significance of these numbers in closing argument, and John Billups' trial attorney used these numbers. In closing, the state actually said that the one in 32,000 is a significant number, called it significant, and said that it was conclusive that the cap was the one worn by Wheeler. And it's just incorrect, actually, and it might have misled the jury in believing that this was definitive proof that Donovan Wheeler had touched the glove or had worn the cap, when in fact the probability of inclusion statistics just relate to whether or not there's a probability that Donovan Wheeler could have been in the pool of people that could have contributed to that sample, not that it proves that he was the one that wore the cap or touched the glove. And Billups again uses and highlights the DNA evidence that's admitted against Wheeler, when in closing, Billups' attorney argued that DNA doesn't lie and that the DNA tied two black males to the crime scene. And those two black males were Jabari O'Connor and Donovan Wheeler. So we have the state using this DNA evidence to destroy Donovan Wheeler's testimony, the credibility of his testimony. We have the state using this DNA evidence to link Wheeler to the crime scene. And then we have Billups' attorney using this evidence to support a two-man theory, which again contradicts Wheeler's testimony that he saw three men, and also uses it directly against Donovan Wheeler to say the state proved beyond a reasonable doubt that the two men that committed this crime were O'Connor and Wheeler, and they proved it through the DNA evidence. So that's how the DNA evidence became prejudicial in this case. And so even if this Court finds that the skull cap evidence was sufficient enough, certainly the admission of the glove was enough to require reversal in this case. Well, are you suggesting that defense counsel and or the jury wouldn't figure out that the glove was meaningless as relating to your client? I mean, there's the opportunity to explain that and cross-examine on that. Right. Well, I also argued in Mr. Wheeler's brief that defense counsel did an inadequate job of exploiting the, of pointing out the weakness of these statistics, didn't explain that, you know, they used one locus on one test and three on the other. And there's case law that shows that counsel's ineffective if they don't point out, especially in a case like this where the evidence is so weak to begin with, that a non-match at any of the other loci could be exclusion, could be, you know, could be affirmative proof of exclusion. And so the jury wasn't informed about that. And many studies show that juries are really persuaded by DNA evidence, and they believe the reliability of DNA evidence. And in a case here where... What reliability would they attribute to 1 and 2? I think that they could say, well, just like the state, and I believe it was the state that referred to the 1 and 2, that the glove evidence in closing didn't say that it was highly probative, but did refer to it at least in closing. I think that any jury could easily think, well, you know, especially because we know that they bought Billup's defense, so they're thinking to themselves, okay, two guys, two guys' DNA might be on this glove right outside the jewelry store. That makes sense. And they may be more swayed by all of these little factors. Counsel, I'm sorry. You're out of time, but you will have additional time on rebuttal. Okay, thank you. Ms. Paige Brooks. Good afternoon. May it please the Court. My name is Allison Paige Brooks. I appear on behalf of the people. This Court has to follow the Beach case from the Illinois Supreme Court. Beach holds that it's more appropriate to resolve a claim of ineffective assistance of counsel in a collateral proceeding where the evidence or where the record is inadequate or incomplete for resolving the claim. And that is exactly the situation here where this is a strategic issue and there is no record as to why defense attorney who after, at one point, they discussed the severance issue where Billups had moved to sever and continued to object to having a trial with the defendant. But the defendant's attorney commented nothing was disclosed so far and would move for severance at the appropriate time should occasion arise. Well, the defense position on appeal now is that occasion did arise, but the defense attorney who knew about the possibility of severing a trial if the defenses became antagonistic somehow failed to make that motion during trial, even though he was looking for that during trial. And so this is not a situation where it can be assumed that the defense attorney was ignorant of the ability to file a motion to sever mid-trial. Instead, the motion to sever if it granted would have required a mistrial. The defendant would have had to go to another trial before a different set of jurors. It's a situation where the defendant may have an opinion as to whether he wants to do that or not, and he could have communicated that to the attorney, and we have no way of knowing that on this record. And the other thing is the defense attorney could have read the jurors during the acquired year, during the testimony, seen their reactions, gauged their reactions, and had an opinion, an informed opinion as to the merits of proceeding with the trial before this jury versus chancing that you can get a different jury that might not be as likely to acquit him. Also, he would be foregoing the benefits that go along with the attacks on Jabari O'Connor's credibility that the attorney for John Billups had made. Now, they're arguing the prejudice from the attacks or the allegations, the comments on the evidence that John Billups' attorney made with respect to Donovan Wheeler's issue of his guilt. However, there were benefits on the other side here. This is not a situation where it was just like they're characterizing it almost that somehow the prosecution and Billups' attorney double teamed the defense here, Mr. Donovan Wheeler. It's not that situation because instead, Billups is operating on his own, and he is working against the prosecution, the prosecution that was relying on the testimony of Jabari O'Connor. And Billups was showing why that testimony should not be accepted. And that is beneficial to the defendant to have essentially double teaming the prosecution here, two attorneys arguing the same points as to why Jabari O'Connor should not be believed. So that benefit would be forfeited if he went to another trial with a different jury by himself. Counsel, let's assume, just for purposes of argument's sake, that we find that the admission of the evidence related to the latex glove was improper, that counsel should have made the motion to separate the trial. As it came in, can the defendant establish that he was prejudiced? With respect to, I'm sorry, the latex glove? The one and two probability? Yes, yes. The state's position is that that would be merely cumulative and not prejudicial. This bull cap was found along the same flight path. It might not have been as close to the robbery. The site of the robbery in Rothery Jewelers, it was, I believe, across the street along the same flight path. So the probability was one in 32,000 on this bull cap, which is much more powerful. And the other one was a minor profile, I believe, and not the primary profile, which was Jabari O'Connor. So I still have more arguments with respect to the strength of the other evidence, which makes this case that the argument would be not prejudicial. I don't know if you would like me to get into that. However you want to do it is fine. Okay. Thank you, Your Honor. Well, excuse me. So I was just going to say is that the fact that Bill's attorney presented opening statements and closing arguments and cross-examination is not equivalent to an accusation from Billips from the witness stand. It was in the Bramlett case where it recognized that antagonistic defenses have typically been confined to where a co-defendant actually takes a stand and testifies implicating the other defendant. Here that's not the situation. So it's not really Billips as being an accuser of Donovan Wheeler. It was simply Billips' attorney was commenting on the evidence mostly, and that's something that is proper versus the Byron and Bean cases the defense relies on where it was something along the lines of guilty people never testify in a case where one of the defendants did not testify, and that is a violation of his right to not incriminate himself, and that's a very powerful error. And there is no inherent error in an attorney commenting on the evidence. So that's why those Byron and Bean cases are distinguishable from this situation. It's also not a true contest, as I explained, between having the prosecution sort of letting the two defendants duke it out and whichever one loses is going to get convicted and the one who wins is going to be acquitted. Now, even though Billips was acquitted, it's not because that the prosecution somehow pit them against each other. It's not what happened. Billips was acquitted because lack of DNA evidence, but also the defense emphasizes that, well, Billips was the only one identified. Well, the identification was a show-up, which has some sort of inherent suggestiveness to it, and also the person in the store had something covering his face, so some sort of material covering his face, which made it. So it's not a very strong identification. And also, Billips was apprehended at a different time away from the place where O'Connor and the defendant were together, that 306 Franklin. So there's a lack of a tie there to that address. I think, though, if his girlfriend was upstairs, but see, the defendant and O'Connor were in the A apartment, which was in the ground floor, not the upstairs apartment. So this was a stranger's apartment. The defendant was apprehended on a bed in a bedroom of a stranger, somebody he claimed to have an affair with or social relations with, which she denied, and he didn't even know her name. He thought her name was Mary, her name was Amanda. It just seemed to be a preposterous type of theory of defense, but this is what he offered in his testimony, and that's something that the jury can consider. And the fact that he admitted on cross-examination that he had traded clothes and provided some clothing to Jabari O'Connor in the basement, the basement where robbery proceeds were located. So he's in the basement with robbery proceeds, providing clothing or trading clothing with Jabari O'Connor, all because he thought that he was told by somebody that the police were out and forced and that he had some drugs in his pocket. And he says he disposed of the drugs in a drain in the basement, but somehow ended up on a bed of a stranger in an adjoining apartment. So it seems like something that the – there's the testimony of O'Connor, but that is corroborated very strongly by – very powerfully by the nearly overwhelming circumstantial evidence, including the DNA test on the skull cap and the circumstances of where he ended up and was apprehended. And for that reason, there's no reasonable probability of a different result. So even if he got his own trial, even if he – like after a motion to sever, even if they had excluded the 1 and 2 on the probability under the Pike holding with respect to the latex glove, that would – he would still – but this is an issue of ineffective assistance. Even though Pike – that came out later after this trial, so that's not something the defense attorney could have used to cite or been aware of at the time. And instead, the case that he could have – the defense attorney would have known about was the Mitchell case. And Mitchell is a case where it was 1 in 71. And that was held to be admissible, and it was up to the jury to decide what weight to give it. And so this is – whether or not to object is a strategic issue. And the defense attorney, knowing Mitchell, having been decided by the time of the trial, could have known that this would be a fruitless objection to make because if Mitchell, 1 in 71, is good enough, then 1 in 32,000 should be admissible as well. But what about 1 in 50? 1 in 50? I mean 1 in 2. 1 in 2. Right. Well, the Pike case had not yet been decided at that point. So the defense attorney could have made that objection, but the question is whether every competent attorney would have done so because there is an element of strategy and there's a heavy measure of deference and strong presumption of competence that applies in these sort of claims. And so it's not to be assumed that the defense attorney was ineffective for failing to make that objection. It's particularly when the case like Pike had not yet been decided. Was the DNA evidence subjected to meaningful cross-examination by defense counsel? Yes, Your Honor. Maybe not perhaps as extensive as the defense would like because the defense is pointing out a few things that perhaps could have been added to it. But there was some meaningful cross-examination. There was questioning about how probabilities work and whether or not something is a match and things like that. So there was a fairly extensive line of attack to the weight of the DNA evidence. So the defense attorney did not have to necessarily challenge its admissibility in order to provide effective assistance. Is it your opinion that it was clear to the jury that with respect to the evidence that was just the one and two, the DNA evidence that you've got two people walking down the street, pairs of twos walking down the street in a line and one and two, one out of two, one out of two, do you think that was clear to the jury? I mean how many occurrences there would be? I think what was even more powerful is the admission that like out of a room of ten people, that all ten could be excluded from the one in 32,000 or something along the lines that was even that one, or I think it would have been they could have all been included sort of like not, I'm sorry, not excluded from the one in 32,000. A room of ten is possible and the admission was by the state's witness was that even in a room of ten people, all of them could have been not excluded from the one in 32,000. I mean that shows that's a powerful attack on the weight of that evidence and to say that yeah, the one and two, it'd have to be even more likely than you could be talking about much larger rooms of people who could all not be excluded. So I think that was a very powerful line of attack and so that would be my response to that question. That's the extent of my prepared remarks. I would entertain any other questions. I don't see anything. Okay, thank you. Any rebuttal, counsel? I just have a few points to make. With respect to the prejudice caused by the glove, counsel argued that it was cumulative evidence because of the skullcap evidence. But that skullcap was not linked to the scene of the crime or to Jabari O'Connor, unlike the glove. So the glove provided much more of a link to the crime than the skullcap, which was found in an open field next to another item that was completely not connected to anything. As for defense counsel's failure to challenge the DNA because Pike hadn't been out yet, the evidence, the rules of evidence have been on the books for a real long time. And the attorney in Pike used them for the first, in that case, and attorneys before Pike used them. For example, in Schultz, that was a 1987 case in which blood enzyme evidence was attacked as being so irrelevant that it was inadmissible. So the law was there and counsel failed to use it. The state's use of Mitchell to compare this case to is, Mitchell is distinguishable because although it did involve a 1 in 71 probability of inclusion statistic, the evidence in that case was not closely balanced. It was nowhere near as suspect as the evidence in this case. And also that issue on appeal was not the same issue that we have here. That issue, defense counsel on appeal had argued that the evidence was inadmissible because it didn't meet the FBI standards to be a true match. That's not what we're arguing here. We're arguing that the evidence was so insignificant that it was inadmissible as relevant evidence. And then just going back to the severance issue, this issue does not need to be raised on collateral proceedings. And in fact, the recent Illinois Supreme Court case of Veach supports Wheeler's contention on that point because Veach was presented with the issue of whether ineffective assistance of counsel claims should always be or almost always be presented only in collateral proceedings. And they rejected that argument. They actually reversed the appellate court and said, no, it doesn't have to be on collateral proceedings. And if the issue can be resolved on direct appeal, it can and should be. And that's the case we have here. The record is adequate to address the issue. It would be a waste of judicial resources for Wheeler to have to file this. If he filed a PC, what would be attached to it? The transcript from this case, which you currently have.  And finally, in reference to the trial strategy, foregoing the benefits of attacking the credibility, that maybe trial counsel didn't want to forego the benefits of attacking O'Connor's credibility and pointing out that the state and billets were not teaming up against the defendant. Yeah, as opposing counsel mentioned, Billups was operating on his own, operating on his own against the state and against Wheeler. And so under those circumstances, there's no adequate trial strategy to support the conclusion that once the antagonism became crystal clear, counsel should not have moved to sever the case. Counsel, I have one question for you. The state has argued that skullcap was found in the path of flight. Do you disagree with that? I'm not certain that the evidence proves that beyond a reasonable doubt. My recollection, there was some evidence about a canine unit coming and they were kind of following around and looking around. I'm not certain that that's sufficient proof of a direct path. There was no other evidence found in that grassy area that was linked to the crime scene or to Jabari O'Connor. So I think it's maybe inconclusive. That would be my answer to that. And for those reasons and the reasons stated in Donovan Wheeler's briefs, we ask that this court reverse his and alternatively reduce his sentence or remand for resentencing based on issue six. Thank you, counsel. We'll be in recess. This matter will be taken under advisement.